**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DELTA BANK,<br><br>       Plaintiff,<br><br>-vs-<br><br>ALEXANDER MALAMUD AND MARTA MALAMUD,<br><br>       Defendant(s). | Civil Action No. 2:12-cv-06688-SRC-CLW |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS**

HOSHOVSKY LAW FIRM
33 WEST 19TH STREET
SUITE 307
NEW YORK, NEW YORK 10011
TELEPHONE: (646) 619-1123
FACSIMILE: (212) 208-4509

&

MEDINA LAW FIRM LLC
THE CHRYSLER BUILDING
405 LEXINGTON AVENUE
NEW YORK, NY 10174
TELEPHONE: (212) 404-1742
FACSIMILE: (888)-833-9534
ATTORNEYS FOR PLAINTIFF DELTA BANK

*On the Brief*

Eric S. Medina, Esq.
Serhiy Hoshovsky, Esq.
Nanor L. Terjanian, Esq.

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. STATEMENT OF FACTS ..................................................................................................... 2

III. LEGAL ARGUMENT .......................................................................................................... 3

   A. Standard for Issuance of Preliminary Injunction ............................................................ 3

      1. Likelihood of Success on the Merits ........................................................................ 4

         a. Plaintiff is Likely to Succeed on its Cause of Action for Fraud ........................... 6

         b. Plaintiff is Likely to Succeed on its Cause of Action for Conversion ................. 8

         c. Plaintiff is Likely to Succeed on its Cause of Action for Unjust Enrichment ..... 9

      2. Irreparable Harm .................................................................................................... 10

      3. Balance of Hardships Favors Delta Bank ............................................................... 13

      4. Issuance of the Preliminary Injunction will be in the Public Interest .................... 14

   B. The Court Should Waive the Bond Requirement, or if Deemed Necessary, Should Set a Minimum Bond ..................................................................................................... 14

IV. CONCLUSION .................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir.1994)................. 9
American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir 1994)............................................... 12
Callano v. Oakwood Park Homes Corp., 91 N.J.Super. 105, 109 (App. Div. 1966) 9
Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 839 (3d Cir.1995)....................................................... 9
Chicago Title Ins. Co.,v. Ellis, 978 A.2d 281 (App. Div. 2009).............. 8
Communications Programming, Inc. v. Summit Mfg., Inc., 1998 WL 329265, at *5 (D.N.J. 1998)....................................................... 8
Elliott v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996)...................... 13
Emerson Radio Corp. v. Orion Sales, Inc., 2000 WL 49361 *7 (D.N.J. 2000).... 7
Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994)....................... 9
Hipple v. Estate of Mayer, 2007 WL 1080421 *8 (App. Div. 2007).............. 9
Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 196 (3d Cir. 1990) 10
Huffmaster v. Robinson, J.A., 221 N.J. Super. 315, 323 (1986)............... 7
Jews For Jesus v. Brodsky, 993 F.Supp. 282, 312 (D.N.J. 1998).......... 11, 12
Kraft Power Corp. v. General Elec. Co., 2011 WL 6020100 (D.N.J. 2011)....... 6
Life Ins. Co. of Va. v. Snyder, 141 N.J. Super. 539, 545 (App. Div. 1976)... 7
Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1182 (3d Cir. 1993)....... 6
Lo Bosco v. Kure Engineering Ltd., 891 F.Supp. 1020, 1032 (D.N.J. 1995)..... 7
Maldonado v. Houstoun, 157 F.3d 179, 184 (3d Cir. 1998)..................... 6
McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 771 (3d Cir.1990)....... 8
Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co., Inc., 963 F.2d 628, 632-33 (3d Cir.1992)................................................... 6
Mueller v. Technical Devices Corp., 8 N.J. 201, 207 (1951).................. 7
New Jersey Carpenters Health Fund v. Philip Morris, Inc., 17 F.Supp.2d 324, 333 (D.N.J. 1998)....................................................... 6
One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F.Supp. 317, 336 (D.N.J. 1997)....................................................... 9
Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800 (3d Cir. 1998)....................................................... 11, 12
Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 807 (3d Cir. 1998)....................................................... 12
See e.g. Allegheny Energy Inc. v. DQR. Inc., 171 F.3d 153, 158 (3d Cir.1999) 6

**PRELIMINARY STATEMENT**

This action seeks to cease and remedy a complex scheme designed and orchestrated by Alexander Malamud ("Mr. Malamud") and Marta Malamud ("Mrs. Malamud" and together with Mr. Malamud, the "Defendants") in conspiracy with Mr. Malamud's father, Arkadiy Malamud ("Arkadiy Malamud"), to defraud plaintiff, Delta Bank ("Delta Bank" or the "Plaintiff") of over $58 (fifty-eight) million. By this application, Plaintiff Delta Bank ("Delta Bank" or the "Plaintiff") seeks a preliminary injunction against the Defendants to prevent irreparable harm caused by this elaborate scheme by enjoining the Defendants from disbursing and/or misappropriating funds or assets obtained from funds loaned by Delta Bank outside the ordinary course.

At the center of this intricate scheme is a group of well-known agricultural companies in Ukraine known as "Inseco Group." Inseco Group is owned and/or controlled by the Defendants and Arkadiy Malamud. The Defendants acting as agents for Inseco Group duped Delta Bank to loan over $58 (fifty-eight) million to finance the operational needs of Inseco Group and its restructuring in preparation for an initial public offering (the "IPO"). Delta Bank is a leading Ukrainian bank with a reputation for financing agriculture-related projects and welcomed the Defendants' proposed financing plans for Inseco Group. The Defendants even promised Delta Bank that in exchange Delta Bank would be entitled to receive a share of profits realized from the sale Inseco Group through the IPO.

However, the Defendants never intended to perform their obligations under the loan agreements or repay the loans to Delta Bank. Rather, the Defendants used Inseco Group as a sham to disburse the loaned funds for their personal benefit. Ongoing investigations to date have revealed that the Defendants used the funds to, *inter alia*, purchase expensive vehicles and real

estate, and pay off personal debts. Delta Bank has lost over $60,000,000.00 as a result of the Defendants' elaborate scheme. The Defendants with Arkadiy Malamud continue to actively conceal the assets and funds obtained for their personal benefit by way of their misrepresentations to Delta Bank. Delta Bank seeks this preliminary injunctive relief to thwart the Defendants' efforts in fully executing their fraudulent scheme. Absent a preliminary injunction, Delta Bank will suffer further irreparable harm and will be unable to collect the judgment that it will recover in this action.

## STATEMENT OF FACTS

The salient facts set forth in detail in the accompanying Complaint, Affidavit of Vitaliy Masyura ("VM Affidavit") and Affidavit of Roman Pavlenko ("RP Affidavit:") are as follows:

- The Defendants are husband and wife residing in New Jersey. See Complaint, ¶ 5.

- Together with Arkadiy Malamud, the Defendants own and/or control a large agricultural business in Ukraine, consisting of several Ukrainian and foreign companies, collectively referred to as the "Inseco Group." See VM Affidavit, ¶ 3.

- Upon information and belief, Mr. Malamud is a U.S. citizen. Id. at ¶11. Upon information and belief, Mr. Malamud acted as a commercial director of Inseco Group and received a cash salary of $10,000.00 per month from one of the companies of Inseco Group. Id. Upon information and belief, since summer of 2010 to the present, Ms. Malamud was unemployed. Id. at ¶ 13.

- Delta Bank is a leading Ukrainian bank, and is partly owned by a U.S. financial and agricultural group Cargill Financial Services International, Inc., based in Minnesota. Id. at ¶ 5, 6. Delta Bank specializes in providing loans and financing for agriculture related projects. Id. at ¶ 7.

2

- In the summer of 2010, the Defendants and Arkadiy Malamud approached Delta Bank and requested loans to finance the operational needs and restructuring of Inseco Group to prepare its shares for sale through an initial public offering ("IPO"). Id. at ¶ 14. In total, Delta Bank agreed to extend over $58 (fifty-eight) million in loans (the "Loans") to Inseco Group. Id. In exchange, Delta Bank would be entitled to receive a share of the profits realized from the sale of Inseco Group through the IPO. Id.

- The principal reason that Delta Bank agreed to make the loans was its reliance on fraudulent representations made by the Defendants and Arkediy Malamud, including:

  - that the loan funds extended by Delta Bank would be used solely for financing operational needs of Inseco Group, such as plowing, sowing, buying seeds, fertilizers and harvesting the crops; and for buying new agricultural equipment and hiring consultants, such as KPMG, one of the large accounting firms, to do the audit and prepare Inseco Group for the IPO;
  - that the loan proceeds would not be used for the personal benefits of the Defendants;
  - that Delta Bank would participate in the IPO and would receive a share of proceeds realized from the IPO;
  - that Inseco Group, including Grand Hall LLC that is wholly owned and controlled by Mr. Malamud, would pledge all of its agricultural equipment as security to secure the loan from Delta Bank and would not deal with any other lenders;
  - that the Defendants would pledge their personal assets as a security for the loans received from Delta Bank;
  - that the Defendants would not encumber the assets they control with any other liens;
  - that the Defendants would not take out any funds from Inseco Group until the loans are repaid.

Id. at 14, 17.

- Relying on the above representations, on January 24, 2011, Delta Bank entered into a the Financial and Share Participation Agreement (the "Agreement") which provided the general parameters for the loans to be extended by Delta Bank to Inseco Group and Delta Bank's participation in the IPO of Inseco Group (the "Agreement"). See Exhibit D; VM Affidavit at ¶ 20.

3

- The funds to Inseco Group were disbursed pursuant to a series of agreements. See VM Affidavit at ¶ 22. Under this series of agreements, Delta Bank disbursed over $58,359,620.00 to Inseco Group and affiliated entities as follows:

    - November 23, 2010 - $48,750,000.00 loan agreement with Agro XXI LLC of Inseco Group ("Agro XXI Agreement"). See Exhibit F.
    - September 16, 2011 - $7,125,000.00 loan agreement with Ovas PE of Inseco Group ("Ovas Agreement"). See Exhibit G.
    - January 24, 2011 - $2,653,000.00 loan agreement with Mr. Malamud's stepmother, Galina Malamud ("Galina Malamud") to finance the operational needs of Inseco Group (the "Galina Agreement"). See Exhibit H.

- Delta Bank began to believe that the Defendants were self-dealing the funds loaned by Delta Bank to Inseco Group, and launched an investigation. See VM Affidavit at ¶ 26. The investigation is ongoing, but to date the following unlawful actions of the Defendants have been uncovered:

    - In spring of 2011, Mr. Malamud assisted his father in falsifying records to obtain $1,535,000 from Delta Bank as "reimbursements." The funds were used to "reimburse" Arkadiy Malamud for the payments he purportedly made for the lease of farmland for Inseco Group. In fact, he never made such payments and father and son simply pocketed the loan money.
    - In summer of 2011, the Defendants sold fertilizer purchased with Delta Bank's funds for $500,000 and pocketed the money.
    - In fall of 2011, the Defendants and Arkadiy Malamud used fake documentations and contracts with captive companies to take out $413,000 from Inseco Group as purported contract fines.
    - In fall of 2011, the Defendants and Arkadiy Malamud falsified business records and embezzled harvest of sugar beets in Babin municipality of Rivne Region paid for with Delta Bank funds, in the amount of $531,000.
    - Throughout 2011, the Defendants and Arkadiy Malamud used Delta Bank funds provided to Inseco Group to pay off their personal debts totalling over $4,000,000.00.
    - In April, 2011, the Defendants purchased expensive items for personal use with the funds provided by Delta Bank, including the purchase of a Toyota Prado and a Toyota Land Cruiser, and an office in Kyiv at Velyka Vasylkivska str. that was not accounted for in Inseco's books and records, in the amount of $368,000.00.
    - In April-May, 2012, Grand Hall LLC, which is wholly owned by Mr. Malamud, pledged its assets to Zlatobank as a security for the loans in the overall amount of approximately $12,573,440. This action was taken to secure the assets and make them unavailable as security for Delta Bank loans.

4

- Since Delta Bank loaned the funds, the Defendants purchased several luxury vehicles with an estimated value of about $450,000.00, including: a Mercedes-Benz 320, a Porsche Carrera, an Aston Martin DB9, a Mercedes-Benz CLS 550, and a Porsche Cayenne Turbo S.
- Since Delta Bank loaned the funds, the Defendants purchased several pieces of expensive real estate in Ukraine valued at over $1,000,000, including: two apartments at # 95 Chervonoarmiiska Street, Kyiv, Ukraine, a land plot in Kyivo-Sviatoshynskyi district, Kyiv Region, Ukraine, office premises at # 90/95 Novoberegova Street, Odessa, Ukraine; and a land plot in Rivne Region, Ukraine, on which defendants build a country mansion.

See VM Affidavit ¶ 26, 27, 30, and 32.

- Delta Bank commenced an arbitration proceeding in London against Arkadiy Malamud. Id. at ¶ 3. On May 9, 2012, The High Court of Justice, Queens Bench, Commercial Division in London issued a Freezing Injunction Order to Restrain Assets Worldwide against Arkadiy Malamud restraining him from disposing of and dissipating the assets during the pendency of the arbitration ("Freezing Order"). See Exhibit A; VM Affidavit at ¶ 3.

- Arkadiy Malamud, in blatant disregard of the Freezing Order, continues to self-deal the funds loaned by Delta Bank to Inseco Group by selling off and concealing assets. Id. at ¶35. The Defendants are actively assisting Arkadiy Malamud to violate the Freezing Order. Id.

## LEGAL ARGUMENT

Plaintiff Delta Bank seeks a preliminary injunction to enjoin the Defendants from disbursing and/or misappropriating funds or assets obtained from funds loaned by Delta Bank outside the ordinary course.

### A.   Standard for Issuance of Preliminary Injunction

In order to obtain a preliminary injunction, the moving party must demonstrate: (1) the movant's likelihood of success on the merits; (2) the probability of irreparable harm to the

5

moving party if immediate relief is not granted; (3) the potential harm to the non-moving party; and where applicable, and (4) the public interest.  See e.g. Allegheny Energy Inc. v. DOR. Inc., 171 F.3d 153, 158 (3d Cir.1999); Kraft Power Corp. v. General Elec. Co., 2011 WL 6020100 (D.N.J. 2011);  Maldonado v. Houstoun, 157 F.3d 179, 184 (3d Cir. 1998); Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co., Inc., 963 F.2d 628, 632-33 (3d Cir.1992).

> 1.   **Likelihood of Success on the Merits**

Delta Bank is likely to succeed on the merits for its causes of action for fraud, conversion and unjust enrichment for the reasons explained in detail below.

> a.   The Plaintiff is Likely to Succeed on its Cause of Action for Fraud

It is clear that Delta Bank will succeed on its claim for fraud.  In order to succeed on a claim for fraud the moving party must show that the defendant made:

> (1) a material representation of a present fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) on which the plaintiff reasonable relied; and (5) which resulted in damages.

See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1182 (3d Cir. 1993) (citing Jewish Center v. Whale, 86 N.J. 619, 624 (1981); Eli Lilly & Co. v. Roussel Corp., 23 F.Supp.2d 460, 492 (D.N.J. 1998); New Jersey Carpenters Health Fund v. Philip Morris, Inc., 17 F.Supp.2d 324, 333 (D.N.J. 1998) (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).  All five (5) elements are satisfied here.

As detailed above, the Defendants and Arkadiy Malamud made numerous misrepresentations to Delta Bank regarding their request for loans from Delta Bank.  The Defendants and Arkadiy Malamud assured Delta Bank that the funds would be used to finance the operations and restructuring of Inseco Group.  However, the Defendants and Arkadiy Malamud made these statements with full knowledge of their falsity.  The Defendants and

Arkadiy Malamud rather planned to use the funds loaned by Delta Bank for their personal benefit without any intention to fulfill their obligations to Delta Bank or repay the loans. It is well-settled by courts in New Jersey that a statement that one intends to honor a promise made with knowledge of its falsity is a misstatement of present fact. See e.g. Emerson Radio Corp. v. Orion Sales, Inc., 2000 WL 49361 *7 (D.N.J. 2000); Lo Bosco v. Kure Engineering Ltd., 891 F.Supp. 1020, 1032 (D.N.J. 1995). Delta Bank relied on the Defendants and ArkadiyMalamud's misrepresentations to extend over $58 (fifty-eight) million in loans. After these funds were extended by Delta Bank to fund the proposed plans for Inseco Group, the Defendants purchased several luxury vehicles and expensive real estate. The Defendants did not have the wherewithal themselves to purchase such assets. Mr. Malamud's salary did not exceed $10,000 a month and Mrs. Malamud was unemployed. See VM Affidavit at ¶¶ 11, 13.

Delta Bank has not been repaid these loans, nor have the Defendants nor Arkadiy Malamud followed through on their obligations under the loan agreements. As a result of the Defendants' actions and failure to act, Delta Bank has suffered over $60 (sixty) million in damages.

For the foregoing reasons, Delta Bank has satisfied all five (5) elements for a cause of action for fraud and will succeed on the merits of its claim.

    b.    <u>The Plaintiff is Likely to Succeed on its Cause of Action for Conversion</u>

It is also clear that Delta Bank will succeed on its claim for conversion against the Defendants. Conversion is "the exercise of any act of dominion in denial of another's title to ... chattels, or inconsistent with such title." Mueller v. Technical Devices Corp., 8 N.J. 201, 207 (1951); Huffmaster v. Robinson, J.A., 221 N.J. Super. 315, 323 (1986); Life Ins. Co. of Va. v. Snyder, 141 N.J. Super. 539, 545 (App. Div. 1976) ("Conversion is 'the wrongful exercise of

7

dominion and control over the property of another in a manner inconsistent with that other person's rights"); McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 771 (3d Cir.1990); Communications Programming, Inc. v. Summit Mfg., Inc., 1998 WL 329265, at *5 (D.N.J. 1998). Under New Jersey law, money may be subject to conversion claim as well. Chicago Title Ins. Co.,v. Ellis, 978 A.2d 281 (App. Div. 2009).

The Defendants in conspiracy with Arkadiy Malamud converted for their personal benefit loan funds that were received from Delta Bank. See VM Affidavit, ¶ 26-32. Defendants have not repaid these loans to Delta Bank and do not intend to repay these loans to Delta Bank. Rather, the Defendants are actively working to conceal the assets and funds from Delta Bank's reach. In addition, the Defendants wrongfully interfered with Delta Bank's rights to agricultural machinery owned by Grand Hall LLC as well as personal assets of the Defendants that were to be pledged as a security under the loan agreements with Delta Bank. Id. at ¶ 28. Pursuant to the loan agreements with Delta Bank, the loans to Inseco Group entities should have been secured by all of the agricultural machinery of Grand Hall LLC, wholly owned and controlled by the Defendants. Id. However, in April through May of 2012, in violation of such agreements, the Defendants took a $12,573,440.00 loan from ZlatoBank and pledged all assets and machinery of Grand Hall LLC as security for the ZlatoBank loan. Id. at ¶28. As such, the Defendants in conspiracy with Arkadiy Malamud wrongfully converted the funds loaned by Delta Bank as well as collateral for the loans.

For the foregoing reasons, Delta Bank will succeed on the merits of its claim for conversion.

    c.    <u>The Plaintiff is Likely to Succeed on its Cause of Action for Unjust Enrichment</u>

Finally, it is clear that Delta Bank will succeed on the merits for its claim for unjust

enrichment against the Defendants. To recover for unjust enrichment, the moving party must prove that the "defendant 'received a benefit and that retention of that benefit without payment therefore would be unjust.'" Hipple v. Estate of Mayer, 2007 WL 1080421 *8 (App. Div. 2007); Callano v. Oakwood Park Homes Corp., 91 N.J.Super. 105, 109 (App. Div. 1966). Delta Bank can certainly satisfy this standard here.

As detailed above, the Defendants misappropriated the funds loaned by Delta Bank for Inseco Group to use for their personal benefit without any intention to repay Delta Bank. Ongoing investigations have revealed that the Defendants used the Delta Bank funds to, *inter alia,* purchase substantial personal assets and pay off significant personal debts. The Defendants have not fulfilled their obligations to Delta Bank under the loan agreements and do not intend to repay the loans to Delta Bank. Delta Bank has suffered losses of over $60 million as a result of the Defendants' elaborate scheme whereas the Defendants have unlawfully enriched themselves with the money loaned by Delta Bank. It is indisputable that the Defendants have been unjustly enriched.

For the foregoing reasons, Delta Bank will succeed on the merits of its claim for unjust enrichment.

### 2. Irreparable Harm

A party seeking a preliminary injunction must demonstrate "immediate irreparable injury" or a "presently existing actual threat." Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir.1994); Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 839 (3d Cir.1995); One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F.Supp. 317, 336 (D.N.J. 1997). It is well settled that "unsatisfiability" of a money judgment constitutes an irreparable injury. Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994); Hoxworth v. Blinder,

Robinson & Co., Inc., 903 F.2d 186, 196 (3d Cir. 1990).

In this case, absent a preliminary injunction, Delta Bank will suffer irreparable harm in collecting a money judgment obtained by this action. Delta Bank has lost over $60 (sixty) million as a result of the Defendants' elaborate scheme. The Defendants with Arkadiy Malamud continue to actively dissipating and depleting personal assets and assets of Inseco Group that can be used by Delta Bank to satisfy a potential judgment. The following actions revealed by investigation to have been executed by the Defendants with Arkadiy Malamud demonstrate that Delta Bank has already suffered significant irreparable harm and is in danger of suffering further irreparable harm in satisfying a money judgment:

- In spring of 2011, Mr. Malamud assisted his father in falsifying records to obtain $1,535,000 from Delta Bank as "reimbursements." The funds were used to "reimburse" Arkadiy Malamud for the payments he purportedly made for the lease of farmland for Inseco Group. In fact, he never made such payments and father and son simply pocketed the loan money.
- In summer of 2011, the Defendants sold fertilizer purchased with Delta Bank's funds for $500,000 and pocketed the money.
- In fall of 2011, the Defendants and Arkadiy Malamud used fake documentations and contracts with captive companies to take out $413,000 from Inseco Group as purported contract fines.
- In fall of 2011, the Defendants and Arkadiy Malamud falsified business records and embezzled harvest of sugar beets in Babin municipality of Rivne Region paid for with Delta Bank funds, in the amount of $531,000.
- Throughout 2011, the Defendants and Arkadiy Malamud used Delta Bank funds provided to Inseco Group to pay off their personal debts totalling over $4,000,000.00.
- In April, 2011, the Defendants purchased expensive items for personal use with the funds provided by Delta Bank, including the purchase of a Toyota Prado and a Toyota Land Cruiser, and an office in Kyiv at Velyka Vasylkivska str. that was not accounted for in Inseco's books and records, in the amount of $368,000.00.
- In April-May, 2012, Grand Hall LLC, which is wholly owned by Mr. Malamud, pledged its assets to Zlatobank as a security for the loans in the overall amount of approximately $12,573,440. This action was taken to secure the assets and make them unavailable as security for Delta Bank loans.
- Since Delta Bank loaned the funds, the Defendants purchased several fancy cars with an estimated value of about $450,000.00, including: a Mercedes-Benz 320, a Porsche Carrera, an Aston Martin DB9, a Mercedes-Benz CLS 550, and a Porsche Cayenne Turbo S.

10

- Since Delta Bank loaned the funds, the Defendants purchased several pieces of expensive real estate in Ukraine valued at over $1,000,000, including: two apartments at # 95 Chervonoarmiiska Street, Kyiv, Ukraine, a land plot in Kyivo-Sviatoshynskyi district, Kyiv Region, Ukraine, office premises at # 90/95 Novoberegova Street, Odessa, Ukraine; and a land plot in Rivne Region, Ukraine, on which defendants build a country mansion.

See VM Affidavit ¶ 26, 27, 30, and 32.

Furthermore, Arkadiv Malamud, with the assistance of the Defendants, even proceeds in violation of a Freezing Order obtained by Delta Bank on May 9, 2012 against Arkadiy Malamud. The Order was issued by the High Court of Justice, Queens Division in London enjoining Arkadiy Malamud from dissipating and disposing of his personal assets and assets of Inseco Group. See Exhibit A. Notwithstanding, Arkadiy Malamud with the Defendants continues to dissipate and conceal his personal assets and assets of Inseco Group.

Accordingly, Delta Bank is in danger of suffering further irreparable harm absent a preliminary injunction, and the relief requested herein is warranted.

### 3. Balance of Hardships Favors Delta Bank

On a motion for preliminary injunction, the court must balance the equities and consider the extent of irreparable harm, if any, suffered by the Defendants. Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800 (3d Cir. 1998); Jews For Jesus v. Brodsky, 993 F.Supp. 282, 312 (D.N.J. 1998).

It is obvious that in this case that a balance of the hardships favors Delta Bank. The only party that will suffer any legitimate hardship under the circumstances here is Delta Bank. Delta Bank loaned over $58 (fifty-eight) million dollars to be used towards financing the operations and restructuring of Inseco Group. The Defendants however used these funds for their personal benefit and have refused to repay the loans and comply with the obligations under the loan agreements. Any difficulties that the Defendants *might* face under the relief requested herein,

and it is submitted that the Defendants will not face any legitimate hardships, is a result of their own unlawful conduct and does not warrant denial of the preliminary injunction. An injunction is warranted when any difficulties that a defendant faces arose from the defendant's own wrongful conduct. See Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800 (3d Cir. 1998). Delta Bank has lost over $60 (sixty) million as a result of the Defendants' unlawful scheme and will lose the ability to recover a money judgment obtained against the Defendants in this action if they are permitted to continue to distribute and dissipate funds and/or assets obtained fraudulently by the Delta Bank loans.

Accordingly, a balance of the hardships favors the issuance of the preliminary injunction requested herewith.

### 4. Issuance of the Preliminary Injunction will be in Public Interest

Finally, the Court must examine whether the issuance of the injunction serves the public interest. Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 807 (3d Cir. 1998). It is well settled that where a party demonstrates both the likelihood of success on the merits and irreparable injury, "it almost always will be the case that the public interest will favor" the issuance of an injunction. American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir 1994); Jews For Jesus v. Brodsky, 993 F.Supp. 282, 312 (D.N.J. 1998). The issuance of a preliminary injunction in this matter clearly serves the public interest in preserving the integrity of lender's relationship with its corporate borrowers and preventing owners and officers of the borrowers from abusing their positions and misappropriating loan funds.

Accordingly, Delta Bank has also satisfied the final prong for a preliminary injunction to be issued.

**B.     The Court Should Waive the Bond Requirement, or if Deemed Necessary, Should Set a Minimum Bond**

It is well settled that the Court has wide discretion to set a bond requirement or even waive it if it makes the findings that the balance of equities overwhelmingly favors the party seeking an injunction. Elliott v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996). In this case the bond requirement should be waived because the equities overwhelmingly favor Delta Bank. Delta Bank is a lender who seeks to recover funds misappropriated from the corporate lenders by their owners and officers. The losses sustained by Delta Bank as a result of the Defendants' actions exceed $60,000,000.00.

Further, the Defendants are actively aiding Arkadiy Malamud in dissipating and concealing the assets in violation of the Freezing Order of the London Commercial Court. Delta Bank seeks to preserve the status quo while this action is pending. The preliminary injunction is narrowly tailored to enjoin the Defendants from misappropriating the funds obtained from Delta Bank and dissipating and concealing the assets. Delta Bank seeks to enjoin the Defendants from disposing of real estate and motor vehicles that were purchased by Defendants with funds from Delta Bank. The value of these assets is about $1,450,000.00. The amount of funds lost by Delta Bank is over $60,000,000.00 over forty (40) times more than the value of assets Delta Bank seeks to restrain.

Accordingly, the bond requirement should be waived or the court should set only a minimum bond amount.

## CONCLUSION

For the foregoing reasons it is respectfully requested that the Court issue a preliminary injunction against the Defendants.

    Respectfully submitted,

    /s/ Serhiy Hoshovsky
    Hoshovsky Law Firm
    33 West 19th Street
    Suite 307
    New York, NY 10011
    Telephone: (646) 619-1123
    Facsimile: (212) 208-4509

    &

    /s/ Eric S. Medina
    Eric S. Medina, Esq.
    MEDINA LAW FIRM LLC
    The Chrysler Building
    405 Lexington Avenue
    Seventh Floor
    New York, NY 10174
    Telephone: (212) 404-1742
    Facsimile: (888)-833-9534
    *Attorneys for Plaintiff Delta Bank*